Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000064
29-JAN-2020
07:48 AM

NO. CAAP-18-0000064

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOHN PATRICK KEY, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(WAHIAWA DIVISION)
(CASE NO. 1DTA-16-00551)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Wadsworth, JJ.)

Defendant-Appellant John Patrick Key (**Key**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment filed on January 11, 2018 (**Judgment**), in the District Court of the First Circuit, Wahiawa Division (**District Court**).[1] Key was convicted of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2018).[2]

Key raises three points of error on appeal, contending that the District Court erred when it: (1) failed to dismiss the

---

[1] The Honorable Russell S. Nagata presided at trial.

[2] Key was found not guilty of Negligent Injury in the Second Degree, in violation of HRS § 707-706 (2014).

case for violation of Hawai'i Rules of Penal Procedure (**HRPP**) Rule 48; (2) denied Key's motions to compel; and (3) failed to conduct an adequate <u>Tachibana</u> colloquy.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Key's points of error as follows:

(1) HRPP Rule 48(b)(1) requires criminal charges to be dismissed if trial does not commence within 180 days from arrest or the filing of the charges, whichever is sooner. <u>State v. Hoey</u>, 77 Hawai'i 17, 28, 881 P.2d 504, 515 (1994). HRPP Rule 48 provides, in relevant part:

> **Rule 48. DISMISSAL.**
>
> . . . .
>
> **(b) By court.** Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:
>
> (1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made; or
>
> (2) from the date of re-arrest or re-filing of the charge, in cases where an initial charge was dismissed upon motion of the defendant; or
>
> (3) from the date of mistrial, order granting a new trial or remand, in cases where such events require a new trial.
>
> Clauses (b)(1) and (b)(2) shall not be applicable to any offense for which the arrest was made or the charge was filed prior to the effective date of the rule.
>
> **(c) Excluded periods.** The following periods shall be excluded in computing the time for trial commencement:
>
> (1) periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;

(2)    periods that delay the commencement of trial and are caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances;

(3)    periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel;

(4)    periods that delay the commencement of trial and are caused by a continuance granted at the request of the prosecutor if:

(i)    the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

(ii)    the continuance is granted to allow the prosecutor additional time to prepare the prosecutor's case and additional time is justified because of the exceptional circumstances of the case;

.   .   .   .

(d)    **Per se excludable and includable periods of time for purposes of subsection (c)(1) of this rule.**

(1)    For purposes of subsection (c)(1) of this rule, the period of time, from the filing through the prompt disposition of the following motions filed by a defendant, shall be deemed to be periods of delay resulting from collateral or other proceedings concerning the defendant: motions to dismiss, to suppress, for voluntariness hearing heard before trial, to sever counts or defendants, for disqualification of the prosecutor, for withdrawal of counsel including the time period for appointment of new counsel if so ordered, for mental examination, to continue trial, for transfer to the circuit court, for remand from the circuit court, for change of venue, to secure the attendance of a witness by a material witness order, and to secure the attendance of a witness from without the state.

(2)    For purposes of subsection (c)(1) of this rule, the period of time, from the filing through the prompt disposition of the following motions or court papers, shall be deemed not to be excluded in computing the time for trial commencement:  notice of alibi, requests/motions for discovery, and motions in limine, for voluntariness hearing heard at trial, for bail reduction, for release pending trial, for bill of particulars, to strike surplusage from the charge, for return of property, for discovery sanctions, for litigation expenses and for depositions.

(3)    The criteria provided in section (c) shall be applied to motions that are not listed in subsections (d)(1) and (d)(2) in determining whether the associated periods of time may be excluded in computing the time for trial commencement.

Key contends the District Court erred when it found

that only 147 includable days elapsed between Key's arrest on

3

January 16, 2016, and the filing of his Motion to Dismiss for Rule 48 Violation on December 29, 2016. Key submits that 189 includable days elapsed during that time period due to a delay for court congestion without exceptional circumstances pursuant to HRPP Rule 48(c)(2).

It is undisputed that there was no finding of an exceptional circumstance to continue the hearing on November 17, 2016. However, as the District Court noted, Key had filed a motion to suppress, which was still pending at the time of his Rule 48 motion. Under HRPP Rule 48(d)(1), the time period from the filing of a motion to suppress through the prompt disposition is excludable. State v. Sujohn, 64 Haw. 516, 520-21, 644 P.2d 1326, 1328-29 (1982). "Every pretrial motion is subject to prompt disposition through due diligence by all concerned."[3/] State v. Soto, 63 Haw. 317, 320, 627 P.2d 279, 281 (1981) overruled on other grounds by Hoey, 77 Hawai'i 17, 881 P.2d 504. Thus, the prompt disposition requirement is subject to a due diligence standard, not an exceptional circumstance standard.

Key acknowledges a defense continuance from October 13, 2016, to November 17, 2016 (which took the includable period to 147 days), but argues that there was congestion on November 17th, which makes the subsequent period includable. The District Court rejected this argument, finding that so long as the motion to suppress is handled in an expeditious manner, the period that the

---

[3/] The "prompt disposition" language from paragraph (F) of the Federal Speedy Trial·Act was first applied to HRPP Rule 48(c)(1) in Soto. Soto, 63 Haw. at 319, 627 P.2d at 281. HRPP Rule 48(d) requiring the "prompt disposition" of a motion to suppress was enacted in 1994.

motion is pending is not counted against the State. On that basis, the District Court denied Key's Rule 48 motion. We conclude that the District Court was not wrong in its determination that only 147 includable days had elapsed.

(2) Key argues that the District Court erred by denying various motions to compel.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Impeachment evidence falls within the Brady rule because such evidence is favorable to the accused and, if used effectively, may make the difference between conviction and acquittal. United States v. Bagley, 473 U.S. 667, 676 (1985) (citations omitted).

In Birano v. State, 143 Hawai'i 163, 181, 426 P.3d 387, 405 (2018) (quoting State v. Tetu, 139 Hawai'i 207, 219, 386 P.3d 844, 856 (2016)), the Hawai'i Supreme Court held: "Central to the protections of due process is the right to be accorded a meaningful opportunity to present a complete defense." (Brackets omitted). "Therefore, the prosecution has a constitutional obligation to disclose evidence that is material to the guilt or punishment of the defendant." Id. at 182, 426 P.3d at 406 (citation omitted). "The duty to disclose evidence that is favorable to the accused includes evidence that may be used to impeach the government's witnesses by showing bias, self-interest, or other factors that might undermine the reliability

of the witness's testimony." Id. (citation omitted). "The U.S. Supreme Court thus has rejected any . . . distinction between impeachment evidence and exculpatory evidence in the context of Brady disclosure obligations." Id. (citation and internal quotation marks omitted).

Here, Key sought to compel disclosure of impeachment evidence. "In every instance where a witness is sought to be impeached, the only issue that arises is whether the witness is telling the truth." Asato v. Furtado, 52 Haw. 284, 292, 474 P.2d 288, 294 (1970). "It is character and reputation for truth and veracity, not any other character trait, that is in issue." Id.

Key challenges the denial of his various motions to compel impeachment material on the grounds that: (1) some material was destroyed, but the State did not reveal when it was destroyed and by whom, the State failed to preserve the material, and the State failed to disclose the material to Key; (2) the State would only disclose material relating to truth or veracity; and (3) Key should have received all personnel files, information regarding whether an officer was found not credible, information regarding false statements, information regarding abuse of power, and annual reviews and assessments, including training manuals. Key suggests that Milke v. Ryan, 711 F.3d 998 (9th Cir. 2013), requires disclosure of material beyond the scope of Brady and Giglio v. United States, 405 U.S. 150 (1972), and creates a preservation requirement for information related to an officer's impeachment.

This argument is without merit. Milke did not expand the scope of material required to be disclosed. Milke was based on violations of Brady and Giglio, not a *per se* failure to disclose personnel files, annual reviews, and assessments unrelated to truthfulness or veracity. Milke, 711 F.3d at 1000. In Milke, a police officer's personnel file was required to be disclosed only because it contained relevant impeachment material. Id. at 1018-19. Several courts have held that a refusal to produce police personnel files, without more than a suggestion that such files may contain impeachment material, is not a violation of Brady. United States v. Quinn, 123 F.3d 1415, 1422 (11th Cir. 1997), cert. denied, 523 U.S. 1012 (1998); United States v. Driscoll, 970 F.2d 1472, 1482 (6th Cir. 1992), cert. denied, 506 U.S. 1083 (1993), abrogated on other grounds by Hampton v. United States, 191 F.3d. 695 (6th Cir. 1999); United States v. Andrus, 775 F.2d 825, 842-43 (7th Cir. 1985).

In this case, the State informed the court that it did not intend to call any officer other than Officer Tyler Henshaw (**Officer Henshaw**). Only Officer Henshaw testified at trial. Thus, denial of Key's motions to compel impeachment material for other police officers was not error because there was no testimony to be impeached.

The State further represented to the court that it had performed a background check on Officer Henshaw and found no material pertaining to truth, veracity, or untruthfulness. Key then stated that he was informed that the Honolulu Police Commission was instructed to search its records, but had not yet

indicated whether it had any responsive material. The District Court then allowed Key to issue a subpoena duces tecum to the Honolulu Police Commission for anything bearing on Officer Henshaw's truthfulness, veracity, or honesty, as well as any reprimands.

The State reported that a summary provided by corporation counsel stated that Officer Henshaw was found to have been unprofessional towards someone, "in short terms, a jerk," but that it was not considered an abuse of power or related to truth or veracity.

In State v. Estrada, 69 Haw. 204, 211, 738 P.2d 812, 819 (1987), a defendant claimed the trial court erred by excluding witnesses from testifying that a police officer had an "attitude problem" and was a "pit bull." The court in Estrada stated that the witness testimony was not relevant because an "'attitude problem,' without any specific instances of violence, aggression, or abuse of official powers," did not relate to the defendant's claim of self-defense. Id. at 218-19, 738 P.2d at 823. Similarly, in this case, we conclude that the District Court did not err in rejecting Key's argument that records related to the specific incident of Officer Henshaw's unprofessional behavior were impeachment material required to be disclosed.

The State also reported that some records related to that incident had been sealed and then destroyed. However, as stated above, Key failed to demonstrate that records related to that incident were Brady materials. In State v. Matafeo, 71 Haw.

183, 185, 787 P.2d 671, 672 (1990), a defendant claimed that a complaining witness's clothing was material evidence favorable to him and that its destruction was a violation under Brady, or in the alternative, that Brady should apply where inadvertent loss or destruction of evidence prevents its exculpatory value from being known. The Matafeo court found that there was no Brady violation because there was no evidence that the clothing would corroborate the defendant's version of events and declined to adopt the alternative argument because it "would inevitably compel this court to engage in the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Id. at 186, 787 P.2d at 673 (internal quotation marks omitted). The Matafeo court left open the possibility that, in certain circumstances, regardless of good or bad faith, the State may lose or destroy material evidence which is so critical to the defense as to make a criminal trial fundamentally unfair. Id. at 187, 787 P.2d at 673. However, Key made no such claim in this case.

Key also contends that the District Court should have compelled discovery of a copy of the training manual used to train Officer Henshaw to administer field sobriety tests, for impeachment purposes. In State v. Nishi, 9 Haw. App. 516, 522, 852 P.2d 476, 479 (1993), this court held that "a lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity to observe the other person." (citation omitted). "In Hawaii, it is common knowledge that, where a police officer reasonably believes that a motorist is

DUI, the officer will order him out of the car and administer field sobriety tests to the motorist with his consent." Id. at 522, 852 P.2d at 480. An officer may testify, based on his perception of a defendant's lack of coordination, that the officer was of the opinion that the defendant was intoxicated. Id. at 523, 852 P.2d at 480. However, the officer may not testify that a defendant failed to pass a field sobriety test without sufficient foundation as to the officer's knowledge of the Honolulu Police Department's field sobriety testing procedure. Id. In State v. Toyomura, 80 Hawai'i 8, 26-27, 904 P.2d 893, 911-12 (1995), the supreme court adopted the holding of Nishi and rejected an argument that the Nishi rule was violated, concluding that any lay person, including a police officer, can have an opinion regarding sobriety. In Toyomura, the officer testified that he had had an opportunity to observe people who had been drinking at different levels for approximately nineteen years. Id.

In this case, the State stated that Officer Henshaw would not be called as an expert witness and would only testify as to his lay observations of Key's ability to follow instructions. Key nevertheless insisted that he needed the manual to challenge the instructions given to Key and his ability to follow the instructions. As in Toyomura, we conclude that an officer's testimony about the instructions he gave, and a defendant's ability to comply with those instructions, do not require foundation regarding an officer's knowledge of field sobriety testing procedures. Thus, the field sobriety training

manual was not discoverable to impeach Officer Henshaw's lay observations.

(3)  Key contends, *inter alia*, that his waiver of the right to testify was not made knowingly, intelligently, and voluntarily, because the District Court failed to conduct a true colloquy as part of the ultimate colloquy.  After the State rested its case, Key's counsel stated Key would not testify, and the District Court conducted the following colloquy:

> MR. O'GRADY:  Your Honor, so, Your Honor, it's the defense's case and at this time the defense is going to rest.  Mr. Key is not going to testify.
>
> THE COURT:  Okay.  Mr. Key?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  I've been informed that you will not be testifying.  As I mentioned earlier, when it comes time to present your case, which is now, you have the opportunity to come up and get sworn under oath and testify.  If you testify, the State would cross-examine you on all matters related to your testimony. I will also mention that you also have a right not to testify.  And no one can prevent you, if you want to testify, no one can say you cannot testify, you have the opportunity to testify if you so choose.
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  But if you do not testify, I will not hold that against you in any way, I will not hold the fact that you didn't testify to determine if you're guilty or not guilty.  Do you understand that?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And I'll also mention that you should first confer with your attorney but in the end you have to decide for yourself whether you're going to testify or not.  And we're at that part where at this point I need to know from you whether it's your personal decision not to testify.
>
> THE DEFENDANT:  Yes, it is, sir.
>
> THE COURT:  Okay.  Thank you very much.
>
> MR. O'GRADY:  State -- I'm sorry.  Defense rests.
>
> THE COURT:  Okay.  Thank you.  Arguments?

In State v. Celestine, 142 Hawai'i 165, 171-72, 415 P.3d 907, 913-14 (2018), the supreme court emphasized that a trial court must obtain a response from the defendant as to his understanding of his right to testify and his right not to testify and that it is insufficient to simply get confirmation of the attorney's statement that the defendant would not be testifying. As in Celestine, we conclude that the District Court did not engage in a sufficient verbal exchange with Key to ascertain whether Key's waiver of the right to testify was based on his understanding of the principles relayed by the District Court.[4/]

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Id. at 173, 415 P.3d at 915 (citation omitted). "The relevant question is whether there is a reasonable possibility that the error might have contributed to the conviction." Id. (citation, internal quotation marks and brackets omitted). In this case, the error was not harmless because it is not knowable whether Key's testimony, had he given it, could have established reasonable doubt that he operated a vehicle under the influence of an intoxicant. Id.

Accordingly, the District Court's January 11, 2018 Judgment is vacated, and this case is remanded to the District

---

[4/] The District Court also did not ask Key whether anyone was forcing him not to testify. Celestine, 142 Hawai'i at 170, 415 P.3d 912. The inquiry regarding whether anyone is forcing a defendant not to testify is not the same as an inquiry regarding a defendant's understanding of a constitutional right to testify. Id. at 172, 415 P.3d at 914.

12

Court for further proceedings consistent with this summary disposition order.

DATED: Honolulu, Hawai'i, January 29, 2020.

On the briefs:

Kevin O'Grady,
for Defendant-Appellant.

Chad Kumagai,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge